**INDIANA STATE BOARD OF HEALTH,**
**Appellant–Defendant,**

v.

**THE JOURNAL–GAZETTE COMPANY,**
**and State of Indiana, ex rel. The Journal–Gazette Company, Appellee–Plaintiff.**

No. 02A04–9205–CV–146.

Court of Appeals of Indiana,
Fourth District.

Feb. 10, 1993.

As Corrected on Grant of Rehearing
in Part March 15, 1993.

Rehearing Denied March 15, 1993,
with Correction to Opinion.

**990**

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellant-defendant.

John D. Walda, Kathleen M. Anderson, Barrett & McNagny, Fort Wayne, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Indiana State Board of Health (ISBH) appeals the Allen Superior Court's entry of summary judgment in favor of Plaintiff–Appellee State Journal–Gazette Company, and State of Indiana, ex rel. The Journal–Gazette Company (Gazette), in litigation involving Indiana's Open Door law.

■ The sole question presented by this appeal is whether the amended definition of the term "governing body" as used in the Open Door Law includes meetings where state employees conduct "public business" under regulations promulgated by the state or federal government.

Under Title 19 of the federal Social Security Act, ISBH is charged with certification and oversight of institutions in Indiana which receive federal Medicaid funding for the mentally retarded and functionally disabled. Fort Wayne State Developmental Center (Center), a state Department of Mental Health institution, was so certified. In November of 1990, Mary Louise Reynolds (Reynolds), ISBH's Program Director for Administration, Division of Health Facilities, sent a letter to Marvin Gard, Superintendent of the Center, entitled Order to Terminate Certificate. The letter advised Gard that due to a post-certification survey ISBH had conducted, the Center had been found "out of compliance" with various federal regulations and would not be further certified to receive federal or state Medicaid funds. The letter further advised Gard the Center could contest this termination by requesting "... an informal reconsideration to discuss the issue." (R. 9). Gard replied by mail requesting an informal reconsideration, and further stated "... we will be presenting documentation that will support our credible allegation of compliance with the regulations ..." (R. 11). A meeting for those purposes was then scheduled by Reynolds. The Gazette requested permission to attend that meeting, but its request was denied.

The following ISBH employees attended that gathering:

(a) Reynolds,

(b) her superior, Pierce, by invitation,

(c) the Program Director, MR/DD,

(d) a representative from ISBH's Office of Legal Affairs,

(e) ISBH's Program Director, Special Programs,

(f) its Program Director, Certification,

(g) other participants who requested permission to attend, and

(h) an ISBH clerk to take minutes of the proceedings.

No duly-appointed members of the 11 member executive board of the ISBH, nor any members of any committee duly-appointed by it to advise the ISBH on any matter, attended the Center's informal reconsideration hearing. See IND.CODE 16–1–36–1 and IC 16–1–37–2 (outlining the appointment of board members).

At that gathering, the Center submitted evidence of compliance to refute Reynolds's de-certification letter. This is standard practice under the applicable federal guidelines in de-certification matters. This informal reconsideration was the only remedial procedure available to the Center to refute the survey team's findings, and its only opportunity to offer corrections to the deficiencies found by the survey team, prior to termination of its Medicaid funding.

After that meeting and a subsequent surprise inspection of the Center by the survey team, the ISBH personnel who had been present at the informal reconsideration hearing conferred to discuss the Center's presentation. Reynolds then made a recommendation to Pierce, her superior, as to what final action should be taken. In fact, Pierce always follows Reynolds's recommendations, and Reynolds always drafts the final decision letters for Pierce's signature when institutional certification matters are involved.

ISBH appeals the trial court's summary judgment in favor of the Gazette and the overruling of its own like motion. The facts here are undisputed. As ISBH succinctly states

... there is no question that Reynolds and Pierce were part of a public agency and were taking official action on public business....

Brief of Appellant at 10. The Gazette agrees. Brief of Appellee at 5. The parties also agree the seminal issue here is whether the presence of Reynolds and Pierce at the informal reconsideration hearing rendered it a meeting of a "governing body" of ISBH under the amended definition of IC 5–14–1.5–2(b). The statutory references which follow are foreshortened for economy of space, but refer to the various sections of IC 5–14–1.5 as more specifically indicated.

Gazette argues because Reynolds and her superior Pierce were present, the group assembled for the informal reconsideration proceeding constituted a "governing body" as defined in the Open Door Law. ISBH argues to the contrary. We begin our discussion at the beginning.

The Indiana Open Door Law was first enacted in 1977. It became law as an amendment to IC 5–14 as a new chapter. *See* P.L. 57–1977. The legislature in Sec. 1 declared its intent in passing this Act by saying

Sec. 1. ... It is the intent of this chapter that the deliberations and actions of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order that the citizens may be fully informed....

The operative section of the Act was and is Sec. 3. It reads

Sec. 3. (a) ..., all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them....

Sec. 2(b) defined the term "governing body" as used in Sec. 3. It provided

Sec. 2. For the purposes of this chapter

. . . . .

(b) "Governing body" means the board, commission, council, or other body of a public agency which takes official action upon public business and includes any committee appointed by the governing body to which authority to take official action upon public business has been delegated.

Finally, it defined the term "meeting". It provided

(c) "Meeting" means a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business....

As originally enacted, the Open Door Law applied only to meetings at which "a majority of the governing body" of a public agency was in attendance. The legislature never intended Sec. 3 to apply to gatherings of agency employees conducting the "internal staff operations of public agencies." *See The Open Door Laws: An Appraisal of Open Meeting Legislation in Indiana,* 14 Val.U.L.Rev. 295, 309 (1979–80). Gatherings of employees of public agencies were not then and are not now specifically mentioned as being covered by the Act.

Except for a minor change in 1984, the definition of "governing body" remained unchanged until 1987. At that time, new language was added by P.L. 67–1987, as noted later.

The amendments germane to this appeal contained in P.L. 67–1987 were triggered by this court's decision in *Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616,[1] a unanimous decision of our First District, authored by Judge Neal, and Chief Justice Shepard's strong dissent in our Supreme Court's 3 to 2 denial of transfer in that case. *See Riggin,* 499 N.E.2d 243.[2]

In *Riggin,* a Ball State University professor subject to discipline and eventual dismissal requested an open hearing before the ad hoc committee appointed by the Uni-

---

**1.** Decided March 3, 1986.

**2.** Decided November 6, 1986.

versity Senate to hear his case and make recommendations to the University's Board of Trustees as to what action would be appropriate. When the ad hoc committee denied his request, Riggin sued, claiming the committee was subject to the Open Door Law.

Our First District agreed with Riggin, saying Ball State's Board of Trustees could not do indirectly what it could not do directly, i.e., it could not avoid the Open Door Law's provisions by appointing a committee which appointed a committee which appointed the committee in question. The *Riggin* court held the ad hoc committee was subject to the Act's provisions and it erred by refusing Riggin an open hearing. However, the court also agreed with Ball State's Board of Trustees that literally hundreds of departments, committees, subcommittees, and boards then existing at the university would be covered by the Act.

Denying its interpretation was a massive expansion of the Act, the court said the Open Door Law

> ... is massive and all inclusive by itself, and needs no expansion by us. While we may have sympathy for Ball State, and for amicus curae Indiana State University, and though we may even agree that the law is too broad, cumbersome and unwieldy, and that it imposes time consuming and expensive labors on persons who effect decisions on trivial matters of little public interest, our function is not to judge the wisdom of the Act [Open Door Law], but only its meaning. *Ball State's argument should be addressed to the legislature.* (Emphasis supplied).

489 N.E.2d at 623. Historically, that is precisely what Ball State and other concerned parties did the year after *Riggin* and Chief Justice Shepard's dissent to denial of transfer were handed down. P.L. 67–1987 contains the legislature's response to the *Riggin* decision.

In the 1987 amendment to the Open Door Law's definition of "governing body", the legislature sought to expand the Open Door Law's application, but not to make its application universal, as had the *Riggin* decision. It intended to include not only public boards, committees, etc., within the Act's coverage, but also advisory committees directly appointed by them. To accomplish that purpose, the legislature inserted the following highlighted language into the former definition

> (b) "Governing body" means *two (2) or more individuals who are:*
>
> *(1) A public agency that:*
>
> > *(A) is a board, commission, authority, council, committee, body, or other entity; and*
> >
> > *(B) takes official action on public business;*[3]
>
> *(2)* the board, commission, council, or other body of a public agency which takes official action upon public business; *or*
>
> *(3)* any committee appointed *directly* by the governing body or its presiding officer to which authority to take official action upon public business has been delegated.... (Emphasis supplied).

We must first determine whether that definition, as amended, is clear and unambiguous because an unambiguous statute must be held to mean what it plainly expresses. Courts do not interpret a statute which is clear and unambiguous on its face. Such a statute must be given its apparent or obvious meaning. *In Re Grissom* (1992), Ind., 587 N.E.2d 114, 116. When reviewing a statute, we must examine and treat it as a whole, giving the words used their common and ordinary meaning unless redefined as terms of art. In so doing we must, if possible, give effect to every word and clause therein. *Matter of Lawrence* (1991), Ind., 579 N.E.2d 32, 38; *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823. We cannot presume the legislature intended the language used in a statute was (a) to be applied in an illogical manner, (b) intended to do an absurd thing, or (c) to enact a statute containing useless provisions, the effect of which can be easily

---

**3.** The trial court did not consider the effect of Sec. 2(b)(1)'s amending words when interpreting this statute. (R. 90). We are not at liberty to do so here because we must give effect, if possible, to every word and clause in the act, as amended. *Matter of Lawrence, supra.*

be avoided. *State ex rel. Hatcher v. Lake Superior Court, Room Three* (1986), Ind., 500 N.E.2d 737, 739; *City of Peru v. Utility Service Bd. of City of Peru* (1987), Ind.App., 507 N.E.2d 988, 991.

Literally applying the minimums of that definition, as amended, Sec. 2(b)(1) tells us it is to apply to public agencies in this state that consist of only "two individuals." We know of none. Nor, as to Sec. 2(b)(2), do we know of any boards, commissions, etc., consisting of only two people. Thus, Sec.'s 2(b)(1) and (2) are useless provisions when literally applied. The legislature did not so intend. *Hatcher; City of Peru, supra.*

Further, although it amended the definition of "governing body," the legislature did not amend its Sec. 2(c) definition of "meeting." Sec. 2(c) says

(c) "Meeting" means a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business.

If the definitions mentioned above were to be literally applied in the case before us, it would require the presence of 544 of the ISBH's 1,087 full time state employees to convene a "meeting" subject to the Open Door Law. Such an interpretation in this or any similar case is clearly absurd. The legislature did not intend such a result. *Hatcher, City of Peru, infra.* Clearly, the amendment is inartfully worded. Because the amendment is ambiguous and of doubtful meaning, we must construe it to give effect to the true intent of the legislature in this regard.

▇▇▇ Two rules of statutory construction aid us in this endeavor. The legislature is presumed to have had in mind the history of the Act, and the decisions of the courts upon the subject-matter of the legislation being construed. *Stith Petroleum Co. v. Dep't. of Audit & Control of Indiana* (1937), 211 Ind. 400, 5 N.E.2d 517, 519. Also, where it is clear that words have been omitted from a statute which are necessary to make it workable and to give it complete sense, they may be read into the Act to express the true legislative intent. *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34, 37, *cert.*

*denied* 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526; *Town of Homecroft v. Macbeth* (1958), 238 Ind. 57, 148 N.E.2d 563, 567. When necessary, courts must add words palpably omitted from a statute. *U.S. Steel Corp. v. NIPSCO* (1985), Ind.App., 486 N.E.2d 1082, 1085, *reh. denied, trans. denied.*

To make the 1987 amendment workable in light of the above, we believe two things must be done: (a) Sec. 2(b)'s subsections (1) and (2) must be read in the conjunctive, and (b) the words "members of" and "and", as highlighted below, must be read into that definition, making Sec. 2(b) read

(b) "Governing body" means two (2) or more individuals who are [*members of*]:

(1) a public agency that:

(A) is a board, commission, authority, ... or other entity; and

(B) takes official action on public business; [*and*]

(2) the board, commission, council or other body of a public agency which takes official action upon public business; or

(3) any committee appointed directly by the governing body or its presiding officer to which authority to take official action upon public business has been delegated.... (Emphasis supplied).

Both Reynolds and Pierce were employees of the Indiana Department of Health and engaged with the others present in taking action upon public business. However, neither were members of the 11 member Indiana State Board of Health, the governing body of the Indiana Department of Health, nor members of any advisory committee directly appointed by that board. Thus, the informal reconsideration meeting was not one conducted by any "governing body" of the Indiana State Department of Health, nor was it a meeting of any advisory committee directly appointed by the ISBH. Being neither, it was not one subject to the Indiana Open Door Law.

Reversed with instructions to vacate summary judgment for the Gazette and enter summary judgment for ISBH.

CHEZEM, J., dissents with separate opinion.

RUCKER, J., concurs.

CHEZEM, Judge, dissenting.

I respectfully dissent with regard to to the majority's application of the Open Door Law. Applying the majority's construction of the term "governing body," as defined by the Open Door Law, it is clear that the action taken by Reynolds and Pierce would be subject to the Law's provisions:

(b) "Governing body" means two (2) or more individuals who are [*members of*]:

(1) a public agency that:

(A) is a board, commission, authority, ... or other entity; and

(B) takes official action on public business; [*and*]

(2) the board, commission, council or other body of public agency which takes official action upon public business; or

(3) any committee appointed directly by the governing body or its presiding officer to which authority to take official action upon public business has been delegated.... (emphasis supplied).

Majority, Op., 993.

Reynolds and Pierce are two (2) or more individuals who are members of a public agency that is an authority. They took official action on public business. They can also be considered "any committee appointed directly by the governing body or its presiding officer to which authority to take official action upon public business has been delegated...."

The majority opinion allows Reynolds and Pierce to escape the Open Door Law because "neither were members of the 11–member Indiana State Board of Health, nor members of any advisory committee directly appointed by that board." *Id.* at 993. I fail to see why two individuals acting together and endowed with such binding State power as to deny federal funding to health care organizations are not considered to be a committee appointed directly by the governing body. The majority tautologically argues that "Nor, as to Sec. 2(b)(2), do we know of any boards, commissions, etc., consisting of only two people.

Thus, Sec.'s 2(b)(1) and (2) are useless when literally applied." *Id.* at 993. However, the majority admits the 1987 amendment to the Open Door Law was "intended to include not only public boards, committees, etc., within the Act's coverage, but also advisory committees directly appointed by them." *Id.* at 992. Reynolds and Pierce can be considered a "committee" for purposes of the Open Door Law:

*Committee.* An individual or body to whom others have delegated or committed a particular duty, or who have taken on themselves to perform it in the expectation of their being confirmed by the body to represent or act for.

*Black's Law Dictionary* at 248 (1979).

Nor should we ignore the policy which permeates the Open Door Law: "The Open Door Law stands as a strong policy decision by the legislature that business conducted by committees of a public body should be conducted in plain sight." *Riggin v. Board of Trustees of Ball State University* (1986), Ind., 499 N.E.2d 243, 244 (Shepard, J., dissenting). The 1987 amendment of the Open Door Law does not diminish the reasoning by our First District in *Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616, that a governing body cannot do indirectly what it could not do directly. It cannot avoid the Open Door Law's provisions by appointing a committee which appointed a committee which appointed the committee (or persons) in question. *Id.*

Moreover, all doubts under open door requirements must be resolved in favor of requiring public meeting, and all exceptions to the rule requiring open door meetings must be narrowly construed. *Evansville Courier v. Willner* (1990), Ind.App., 553 N.E.2d 1386, *affirmed in part,* 563 N.E.2d 1269.

I would affirm the right of a reporter for the Journal–Gazette to have been present at the informal reconsideration meeting.