**Carol MOSES, Appellant–Petitioner,**

v.

**Lezli A. COBER, Appellee–Respondent.**

No. 29A02–9402–CV–98 [1].

Court of Appeals of Indiana,
First District.

Oct. 24, 1994.

---

1. This case was diverted to this office on August 16, 1994, by direction of the Chief Judge.

David Glickfield, Jr., Glickfield, Glickfield
& Glickfield, Marion, for appellant.

Ann E. Zobrosky, Zobrosky & Zobrosky, Marion, for appellee.

## OPINION

BAKER, Judge.

Today we examine Indiana's Grandparent's Visitation Act to decide the requisites of standing to seek visitation rights and the proper focus a court should apply to determine the best interests of the grandchild. Appellant-petitioner Carol Moses appeals the dismissal of her petition for grandparent visitation alleging that the trial court erred in determining that visitation would not be in the best interests of her granddaughter. Lezli cross-appeals claiming that Carol does not have standing.

### FACTS

Carol is the natural maternal grandmother of Dani Nicole Pierson. Carol's daughter, Lezli Cober, gave birth to Dani Nicole on February 11, 1989. Lezli and Greg Pierson, Dani Nicole's natural father, were not married when Dani Nicole was born.

After her granddaughter's birth, Carol attempted to maintain regular contact with her. However, due to constant strife between Carol and Lezli, Carol's attempts to see Dani Nicole on a regular basis failed. The record reveals that when Carol and Lezli were not fighting, Carol was allowed to have regular contact with Dani Nicole. Carol would baby-sit her granddaughter and often spend holidays with the family. However, if Carol and Lezli were having an argument, Lezli would withdraw Carol's visitation.

Lezli terminated Carol's visitation following a dispute between the two over whether Carol would buy Lezli a new home. Lezli complained that Carol should buy her a bigger home. Carol declined because she felt that Lezli was not capable of supporting her current residence. Thereafter, Lezli refused to allow Carol to see Dani Nicole. Therefore, on June 25, 1993, after numerous attempts to see her granddaughter, Carol filed a petition for visitation with Dani Nicole. In response to Carol's petition, Lezli filed a motion to dismiss alleging that Carol lacked standing to seek visitation and, in the alter-

native, failed to present sufficient evidence to show that visitation would be in Dani Nicole's best interests. The trial court, in granting Lezli's motion to dismiss, held that Carol did have standing to pursue visitation but that she failed to show that visitation would be in Dani Nicole's best interests.

### DISCUSSION AND DECISION

Carol challenges the trial court's denial of visitation rights. Lezli maintains that although the trial court erred in finding that Carol had standing, it correctly decided that visitation was not in Dani Nicole's best interests. Grandparent visitation rights are conferred by statute in Indiana pursuant to the Grandparent's Visitation Act (Act). *See* IND.CODE § 31–1–11.7–1 *et seq.* IND. CODE § 31–1–11.7–2 in pertinent part provides:

A child's grandparent may seek visitation rights if:

(1) the child's parent is deceased;

(2) the marriage of the child's parents has been dissolved in Indiana; or

(3) the child was born out of wedlock.

### I. Standing

Lezli contends that Carol lacks standing to seek visitation of Dani Nicole. Lezli first argues that the Act was not intended to permit a grandparent to seek court-ordered visitation when her child has custody and does not desire such visitation. Because this issue concerns a statute, we recognize the limits on our review. We will not interpret a statute which is clear and unambiguous on its face. *See Indiana St. Bd. of Health v. Journal–Gazette Co.* (1993), Ind.App., 608 N.E.2d 989, 992. We must examine and treat it as a whole, giving the statute its apparent and obvious meaning. *Id.* In construing a statute, we will presume the legislature intended the language of the statute to be applied in a logical manner consistent with its underlying goals and policy. *In re Groleau* (1992), Ind.App., 585 N.E.2d 726, 728. The legislature is presumed to have had in mind the history of the act, and the decisions of the courts upon the subject-matter of the legislation being con-

strued.. *Journal–Gazette*, 608 N.E.2d at 993. The legislature amended I.C. § 31–1–11.7–2 in 1993. Prior to its amendment, the Act read as follows:

(a) A court may not grant visitation under this chapter after May 8, 1989, to a grandparent who is the parent of a person:

(1) who is not deceased; and

(2) who has been awarded custody of the grandchild.

(b) A child's maternal grandparent may seek visitation rights, regardless of whether the paternity of the child has been established if:

(1) the child's mother is deceased;

(2) the marriage of the child's parents has been dissolved in Indiana; or

(3) the child was born out of wedlock.

The only circumstances in which a grandparent may seek visitation rights are those enumerated in the Act. *Lockhart v. Lockhart* (1992), Ind.App., 603 N.E.2d 864, 867. Prior to the 1993 amendments, the statute clearly stated that grandparents may not obtain visitation against the wishes of a custodial parent. *See id.* However, in 1993, the legislature deleted subsection (a) and thus expanded a grandparent's right to seek visitation with a grandchild.[2] In view of the specific changes in the Act, the legislature clearly contemplated situations of dissension between the custodial parent and grandparent. The legislature's deletion of subsection (a) reflects its purpose to protect a grandparent whose child, as the custodial parent, was denying visitation with a grandchild due to a conflict between grandparent and child. Therefore, Carol may seek visitation rights of Dani Nicole if she falls within one of the circumstances enumerated in the Act. Lezli argues that she does not.

According to Lezli's interpretation of I.C. § 31–1–11.7–2, a grandparent may seek visitation with the grandchild only if the child's parent is deceased *and* the marriage of the child's parents has been dissolved in Indiana, or if the child's parent is deceased

*and* the child is born out of wedlock. We disagree.

It is illogical to read the requirements in the conjunctive as Lezli suggests. The apparent and obvious meaning of the statute, treated as a whole, is that the legislature intended the three requirements to be read in the disjunctive. *See R.L. v. State* (1982), Ind.App., 437 N.E.2d 482. Thus, a grandparent may seek visitation with a grandchild if the child's parent is deceased, *or* the marriage of the child's parents has been dissolved in Indiana, *or* the child is born out of wedlock. Therefore, we . affirm the trial court's finding that because Dani Nicole was born out of wedlock, Carol has standing to seek visitation with her pursuant to I.C. § 31–1–11.7–2(a)(3).

## II. Visitation

Carol asserts that the trial court erred in determining that visitation would not be in the best interests of Dani Nicole. The legislature has provided that visitation rights may be granted when the court finds that it is in the best interests of the child. IND.CODE § 31–1–11.7–3(a). The legislature further provided that in determining the best interests of the child, the court may consider whether a grandparent has had, or has attempted to have, meaningful contact with the child. I.C. § 31–1–11.7–3(b).

The best interests of the child is committed to the sound discretion of the trial court and will be reversed on appeal upon a showing of an abuse of that discretion. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, 493. An abuse of discretion exists where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *Id.* We will not reweigh the evidence or judge the credibility of witnesses. *Id.*

In the case at bar, the trial judge stated: [A]s far as the best interest of the child, the Court will grant the Petition and Mo-

---

**2.** The former statute also contained subsection (c) regarding paternal grandparents rights. In the 1993 amendments, the legislature dispensed with the distinction between maternal and paternal grandparents.

tion of [Lezli] because all I've heard is what the grandmother wants and her perception in terms of the best interest of the child. The best interest of the child goes to the nurturing on behalf of the custodial parent and along with the extended family to bring that child up in a healthy manner. And if there is conflict between siblings [sic] and parent, then there is no agreement, nor concept in trying to nourish the child. So I find, based upon the facts that the sibling [sic] of [Carol] and she are not having a relationship and are in disagreement about contact or access to this child, there certainly can be no communication in terms of what's in the best interest as far as nurturing this child.

Record at 145–46.

 In his findings, the trial judge focused solely upon the relationship between Carol and Lezli, rather than on the relationship between Carol and Dani Nicole, in determining what was in the best interests of Dani Nicole. In determining whether visitation with Carol would be in Dani Nicole's best interests, the focus should be on the relationship between Carol and Dani Nicole, including whether Carol has had, or has attempted to have, meaningful contact with Dani Nicole. *See* I.C. § 31–1–11.7–3(b). Moreover, we note that a court should not be quick to deny a grandparent's visitation with a grandchild. In *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204 (1975), the supreme court of New Jersey in noting the justifications for adopting its grandparent visitation statute, which is substantially similar to Indiana's, observed:

It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which cannot be derived from any other relationship. Neither the Legislature nor this court is blind to human truths which grandparents and grandchildren have always known.

*Id.* 332 A.2d at 204–05.

We find the statement of the supreme court of New Jersey insightful and adopt its view as supporting the activities of our legislature. Because the trial court, in its findings, focused on the relationship between Carol and Lezli, rather than on the relationship between Carol and her granddaughter, we remand for further proceedings to determine whether, based upon the relationship between Carol and Dani Nicole, visitation with Carol would be in Dani Nicole's best interests.

Reversed and remanded for further proceedings.

ROBERTSON, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent from the majority opinion. I cannot agree with the majority's adoption of *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204 (1975). Under *Mimkon,* the majority holds that the trial court should focus on the relationship between Carol and Dani Nicole in determining the best interest of Dani Nicole. I disagree with this focus. Basing visitation on just one relationship is not enough of a basis to support the child's well-being.

The trial court cited the conflict between Carol and Lezli, Dani Nicole's mother, as a reason visitation with Carol would not be in the child's best interest. A trial court's focus should be on providing the most supportive environment for the child. The trial court here determined that this would be provided by Lezli, without visitation by Carol. The trial court properly considered Dani Nicole's

best interest. I would affirm the judgment of the trial court.