

**FILED**

Mar 29 2019, 6:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Evans
Noblesville, Indiana

ATTORNEY FOR APPELLEE

DawnMarie White
Swenson & Associates PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of E.H.;

Paul Bobby Hernandez,

*Appellant-Respondent,*

v.

Alvina Casillas and Paul Hernandez,

*Appellees-Petitioners.*

March 29, 2019

Court of Appeals Case No. 18A-JP-2137

Appeal from the Marion Circuit Court

The Honorable Sheryl L. Lynch, Judge

The Honorable Marie L. Kern, Magistrate

Trial Court Cause Nos.
49C01-1803-JP-10858
49C01-1803-JP-10865

**Pyle, Judge.**

## Statement of the Case

[1] In this consolidated appeal, Paul Bobby Hernandez ("Father") appeals the trial court's order, which concluded that Alvina Casillas and Paul Hernandez ("Casillas and Hernandez") have standing to seek grandparent visitation of

Father's adopted children, E.H. ("E.H.") and I.H. ("I.H.") (collectively "the children"). Concluding that Casillas and Hernandez do not have standing to seek visitation, we reverse the trial court's order.

We reverse.

## Issue

Whether the trial court erroneously concluded that Grandparents have standing to seek visitation of Father's adopted children.

## Facts

The facts are undisputed. E.H., who was born in March 2005, and I.H., who was born in December 2005, were adjudicated to be Children in Need of Services. In January 2017, the trial court terminated the parental rights of the children's biological parents. Father, the children's biological maternal uncle, and his significant other adopted the children. Father and his significant other are not married.

In March 2018, Casillas and Hernandez, the children's biological maternal grandparents, filed petitions for grandparent visitation as maternal grandparents.[1] Father filed motions to dismiss wherein he argued that Casillas and Hernandez lacked standing to pursue visitation with the children because

---

[1] Casillas and Hernandez filed separate petitions for each child.

no visitation order had been established before the adoption and their visitation petition had been filed after the adoption.

[5] In July 2018, Casillas and Hernandez filed amended petitions for grandparent visitation as paternal grandparents. Father responded to the petitions with motions to dismiss wherein he argued that Casillas and Hernandez lacked standing to petition for grandparent visitation because they did not meet the statutory requirements to seek visitation.

[6] Following a hearing, in September 2018, the trial court issued orders wherein it explained that because Father and his significant other were not married when they adopted the children, the children were "technically . . . 'born' out of wedlock." (App. Vol. 2 at 46). Therefore, according to the trial court, Casillas and Hernandez had standing to seek grandparent visitation. Father appeals the trial court's orders.[2]

# Decision

[7] Father appeals the trial court's order concluding that Casillas and Hernandez had standing to seek grandparent visitation. He specifically argues that Casillas and Hernandez do not have standing to seek grandparent visitation because they do not meet the statutory requirements for standing. Casillas and Hernandez respond that they "have standing to seek grandparent visitation as

---

[2] The two cases have been consolidated on appeal.

paternity was established in [Father] through the adoption proceeding and the minor children were born out of wedlock as [Father] was not married when the adoption was finalized." (Appellees' Br. at 2).

[8] Grandparents historically had no common-law right to visitation with their grandchildren. *In re Visitation of M.L.B.,* 983 N.E.2d 583, 585 (Ind. 2013). In 1982, the Indiana legislature passed the Grandparent Visitation Act ("GVA"), currently codified at INDIANA CODE §§ 31-17-5-1 through -10, which is the exclusive basis for a grandparent to seek visitation. *Id.* Because the GVA was enacted in derogation of the common law, it must be strictly construed. *In re Guardianship of A.J.A.*, 991 N.E.2d 110, 113 (Ind. 2013). To seek visitation rights, a grandparent must have standing as prescribed by the GVA. *Id.* If a grandparent lacks standing, the petition must be dismissed as a matter of law. *Id.* "Courts are not the proper forum for all inter-family disputes and we shall not open the doors of the court to resolve such personal problems as do not come within the statute relied upon." *In re Visitation of J.O.*, 441 N.E.2d 991, 995 (Ind. Ct. App. 1982).

[9] The GVA provides, in relevant part, as follows:

> (a) A child's grandparent may seek visitation rights if:
>
> > (1) the child's parent is deceased;
> >
> > (2) the marriage of the child's parents has been dissolved in Indiana; or

(3)     subject to subsection (b), the child was born out of wedlock.

(b)     A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.

IND. CODE § 31-17-5-1.

[10]    This case requires us to interpret the GVA.

> When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policies underlying the statute's enactment. Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.

*A.J.A.*, 991 N.E.2d at 113 (quoting *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind. Ct. App. 1996), *trans. denied)*. "[C]ourts will reject an interpretation of a statute which produces an absurd result." *JKB* at 605.

[11]    Our decision in *A.J.A.* is instructive in aiding in the interpretation of the GVA statute. In that case, father killed mother in the presence of their two small

children and was subsequently sentenced to sixty years. Paternal grandmother filed a petition for grandparent visitation. She argued that she should have standing under sections (1) or (2) of the GVA because her son should be considered deceased based on his sixty-year prison sentence and the marriage was technically dissolved due to father murdering mother. The Indiana Supreme Court concluded that "both of [g]randmother's theories would produce an absurd result." *A.J.A.*, 991 N.E.2d at 113. The Court specifically explained that her first theory, that her son was for all intents and purposes, deceased, was "an unfortunate attempt[] to circumvent the strict interpretation the statute [was] due and therefore her argument fail[ed]." *Id.* According to the Indiana Supreme Court, there is "clearly a difference between those who, as [g]randmother argue[d], are essentially dead because they are in prison, and those who are dead." *Id.* The Supreme Court further concluded that grandmother's other theory for grandparent visitation, that by virtue of the murder, the marriage was dissolved, "produce[d] an even more nonsensical result." *Id.* at 114.

[12]     Here, as in *A.J.A.*, Casillas and Hernandez's theory, that the children were born out of wedlock because Father was single when he adopted them, would produce an absurd result and was surely not the intent of the legislature. Specifically, Casillas and Hernandez' theory is an attempt to circumvent the strict interpretation of the statute. There is clearly a difference between being "born out of wedlock" and being adopted by an unmarried person. *See id.* A decree of adoption "'severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another.

For all legal and practical purposes a child is the same as dead to its parents.'" *Schmitter v. Fawley*, 929 N.E.2d 859, 861 (Ind. Ct. App. 2010) (quoting *In re Adoption of Thomas*, 431 N.E.2d 506, 513 (Ind. Ct. App. 1982), *superceded by rule on other grounds as recognized in Bowlers County Club, Inc., v. Royal Links USA, Inc.*, 846 N.E.2d 732, 745-36 (Ind. Ct. App. 2006), *trans. denied*). "'This rule means when an adoption becomes final the adoptive parents becomes the actual parent of the child.'" *Schmitter*, (quoting *In re the Visitation of Menzie*, 469 N.E.2d 1225, 1227 (Ind. Ct. App. 1984). An adoption is not a birth. Casillas and Hernandez do not have standing to seek grandparent visitation, and the trial court erred when it concluded that they did.

[13] We further note that "[i]t has long been recognized in our traditions and collective conscience that parents have the right to raise their children as they see fit. Unless there is some compelling governmental interest, it is well-established that government will not intervene in private family matters." *Lockhart v. Lockhart*, 603 N.E.2d 864, 866 (Ind. Ct. App. 1992) (citing *Griswold v. Connecticut*, 381 U.S. 479 (1965)). In light of our traditions, we do not believe that the legislature intended the GVA to apply where the grandparents seek visitation over the objection of a custodial parent who is their own child. *See Olds v. Old*, 356 N.W.2d 571, 574 (Ia. 1984) (holding that the legislature did not intend statute allowing grandparent visitation to apply where the grandparents sought visitation over the objections of a custodial parent who was their own child). Rather, we believe that the GVA was intended to apply only when the parent who is not their child is the custodial parent. *See id.* In such cases, the grandparents'

visitation rights are derivative of those of the noncustodial parent who is their child. *See id*.

[14] This result is consistent with our decision in *In re the Visitation of C.R.P.,* 909 N.E.2d 1026, 1028 (Ind. Ct. App. 2009), *trans. denied*, wherein we held that INDIANA CODE § 31-17-5-1(a) confers standing only upon grandparents who are the parents of the child's deceased parent. In such a situation, the grandparents have lost their opportunity to seek visitation through their deceased child. The GVA contemplates a subsequent dispute over a visitation between the grandparents and a custodian of the children who is not the grandparents' child. The statute does not provide a means for court intervention, however, when the dispute is between the grandparents and a custodial parent who is their child.

[15] Here, pursuant to the adoption, Father is the custodial parent of E.H. and I.H. The grandparents who seek visitation with the children are the parents of Father. They are therefore improperly seeking court intervention in a dispute with their own child. The legislature simply did not contemplate such a situation when enacting the GVA. This would "constitute an unwarranted encroachment into the right of [Father]] to raise [his children] as [he saw] fit." *In re Visitation of J.P.H.*, 709 N.E.2d 44, 47 (Ind. Ct. App. 1999).

[16] Lastly, we note that E.H. and I.H. do not even meet the statutory definition of "child." Specifically, INDIANA CODE § 31-9-2-13 defines child for the purpose of INDIANA CODE § 31-17 as a "child . . . of both parties to the marriage." The term also includes "[c]hildren born out of wedlock to the parties" and "[c]hildren born

or adopted *during the marriage of the parties*." (Emphasis added). Here, the children were adopted, but the adoption did not occur during a marriage. This statutory definition simply does not include children adopted by single, unmarried persons.

[17] Reversed.

Najam, J., and Altice, J., concur.