

**FILED**

Nov 13 2023, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew E. Dumas
Hostetter & Associates
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE
ELIZABETH STONER

Rebecca J. Berfanger
RJ Berfanger Law LLC
Indianapolis, Indiana

Katherine E. Flood
Flood Family Law, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Stoner,

*Appellant*,

v.

Julia M. Stoner and Elizabeth G.
Stoner,

*Appellees*.

November 13, 2023

Court of Appeals Case No.
23A-DC-1185

Appeal from the Marion Superior
Court

The Honorable Alicia A. Gooden,
Judge

Trial Court Cause No.
49D14-2103-DC-1898

**Opinion by Judge Brown**
Judges Vaidik and Bradford concur.

**Brown, Judge.**

[1] Mark Stoner ("Grandfather") appeals the trial court's order dismissing his petition for grandparent visitation. We reverse and remand.

## Facts and Procedural History

[2] In September 2021, the trial court entered a decree dissolving the marriage of Julia Stoner and Zachary Stoner (together, "Parents") and incorporating their marital settlement agreement.[1] The settlement agreement provided there was one child born of the marriage, S.S. Section 2.01 of the agreement provided Parents "shall share joint legal custody of the child." Appellant's Appendix Volume II at 25. Section 2.01 also provided:

> To ensure more responsible parenting and to promote the healthy adjustment and growth of their child, [Parents] agree that they each should recognize and address the child's basic needs:
>
> * * * * *
>
> h.  To develop and maintain meaningful relationships with other significant adults (grandparents, stepparents and other relatives) as long as these relationships do not interfere with or replace the child's primary relationships with the parents.

*Id*. at 25-26. Section 2.02 provided Parents "shall share joint and equal physical custody of the child." *Id*. at 26.

---

[1] The decree stated the parties were "Petitioner, Julia M. Stoner ('Julia')" and "Respondent, whose legal name is currently Zachary Stoner ('Elizabeth')." Appellant's Appendix Volume II at 20.

[3] On September 15, 2022, Grandfather filed a motion to intervene and a petition "to establish grandparent's visitation pursuant to IC 31-17-5" (the "Grandparent Visitation Act" or "GVA"). *Id*. at 43. Grandfather stated he "is the father of Zachary Stoner n/k/a Elizabeth Stoner, as such he is the paternal grandfather of the child," requested an order providing him with reasonable visitation with S.S., and claimed "[t]his is in the best interests of the child" and he "has had significant care of and contact with his grandson since birth." *Id*. The court granted the motion to intervene. On September 29, 2022, the court issued an Order Amending Caption which ordered "[t]hat Caption herein is hereby amended to reflect Respondent's legal name, Elizabeth G. Stoner" and "shall be changed on Odyssey." *Id*. at 49.

[4] On May 4, 2023, the court held a hearing. Counsel for Julia argued Grandfather did not have standing to seek grandparent visitation. Counsel referred to *Matter of E.H.*, 121 N.E.3d 594 (Ind. Ct. App. 2019), and argued "our position is that because both parents in this case continue to share joint legal custody, they are both custodial parents, both have the right to determine the upbringing of their child and that it would not be proper for grandfather who is the parent of a custodial parent to be awarded any grandparent visitation due to a lack of standing." Transcript Volume II at 7. Counsel for Elizabeth "agree[d] with that analysis." *Id*. Counsel for Grandfather argued Parents were "reading language into the statute that isn't there" and *E.H.* did not apply. *Id*. at 9. He argued "the old version of the [GVA] did provide that a grandparent whose own child is the custodial parent can't seek the visitation" and "[t]hat's

not what the act says anymore." *Id.* at 11. The trial court entered a written order providing:

1.    Petitioner [Julia] and Respondent [Elizabeth] are joint custodians who share joint legal and physical custody of the minor child.

2.    Respondent [Elizabeth] is the child of the Paternal Grandfather, who is requesting visitation.

3.    Both parents object to Grandfather's petition and request for visitation.

4.    The Court finds that In re Matter of E.H., 121 NE3rd 594 (Ind. Ct. App. 2019) is directly on point in this matter.

5.    The Court finds that the [GVA] was not intended to apply where the grandparent seeks visitation over the objection of a custodial parent who is their own child.

6.    The Court finds that Grandfather lacks standing to pursue a request for GP visitation under the [GVA], and the Court dismisses the petition.

Appellant's Appendix Volume II at 17.

*Discussion*

Grandfather maintains that he "has the 'right to seek visitation' of his grandson pursuant to the GVA, specifically I.C. § 31-17-5-1." Appellant's Brief at 7. He argues that *E.H.* does not support the dismissal of his petition, *E.H.* relies on caselaw interpreting a prior version of the GVA, and "[n]o longer does the GVA make any kind of distinction between custodial parent and noncustodial parent." *Id.* at 9-10. He also argues *E.H.* involved adopted children and notes the language of Parents' marital settlement agreement.

[6] We note that Parents have not filed appellees' briefs. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Bixler v. Delano*, 185 N.E.3d 875, 877 (Ind. Ct. App. 2022). Prima facie is defined as "at first sight, on first appearance, or on the face of it." *Id*. at 877-878 (citing *Graziani v. D & R Const.*, 39 N.E.3d 688, 690 (Ind. Ct. App. 2015)). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id*. at 878.

[7] When interpreting a statute, we begin by reading its words in their plain and ordinary meaning, taking into account the structure of the statute as a whole. *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023). Mindful of what the statute says and does not say, we aim to avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results. *Id*. We presume the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* Ultimately, our goal is to determine and give effect to the legislature's intent. *Id*.

[8] Ind. Code § 31-17-5-1 provides:

> (a)  A child's grandparent may seek visitation rights if:
>
> > (1)  the child's parent is deceased;

(2) the marriage of the child's parents has been dissolved in Indiana; or

(3) subject to subsection (b), the child was born out of wedlock.

(b) A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.

[9] Ind. Code § 31-9-2-13 provides that "'Child', for purposes of . . . IC 31-17, means a child or children of both parties to the marriage" and "[t]he term includes . . . (1) Children born out of wedlock to the parties. (2) Children born or adopted during the marriage of the parties." Ind. Code § 31-9-2-77 provides: "'Maternal or paternal grandparent', for purposes of IC 31-17-5, includes: (1) the adoptive parent of the child's parent; (2) the parent of the child's adoptive parent; and (3) the parent of the child's parent."

[10] Here, S.S. is a child under Ind. Code § 31-9-2-13, and Grandfather is the parent of S.S.'s parent, Elizabeth, under Ind. Code § 31-9-2-77. Moreover, the marriage of Parents has been dissolved in Indiana. Accordingly, Grandfather "may seek visitation rights" as referenced in Ind. Code § 31-17-5-1(a)(2).

[11] Further, we find that *E.H.* does not require dismissal of Grandfather's petition. In that case, the parental rights of the children's biological parents were terminated, and Paul Bobby Hernandez, the children's biological maternal uncle, and his significant other adopted the children. 121 N.E.3d at 595. Hernandez and his significant other were not married. *Id.* The children's

biological maternal grandparents filed petitions for grandparent visitation. *Id*. The trial court found that, because Hernandez and his significant other were not married when they adopted the children, the children were "technically . . . 'born' out of wedlock" and thus the biological maternal grandparents were able to seek grandparent visitation. *Id*. at 596. On appeal, this Court found there was a difference between being born out of wedlock and being adopted by an unmarried person, a decree of adoption severs the parent and child relationship, an adoption is not a birth, and the biological maternal grandparents could not seek grandparent visitation. *Id*. at 597. Here, as previously stated, Grandfather may seek visitation as referenced in Ind. Code § 31-17-5-1(a)(2) where the marriage of the child's parents has been dissolved in Indiana, and he need not rely on subsection (3) of the statute related to visitation where a child is born out of wedlock.

[12] To the extent *E.H*. cites *Lockhart v. Lockhart*, 603 N.E.2d 864 (Ind. Ct. App. 1992), and states "the GVA was intended to apply only when the parent who is not their child is the custodial parent," *E.H.*, 121 N.E.3d at 598, the court in *Lockhart* discussed a statute which provided "[a] court may not grant visitation under this chapter after May 9, 1989 to a grandparent who is the parent of a person: (1) who is not deceased; and (2) who has been awarded custody of the grandchild." *Lockhart*, 603 N.E.2d at 865 (citing Ind. Code § 31-1-11.7-2[2]).

---

[2] Subsequently amended by Pub. Law No. 229-1993, § 1, and repealed by Pub. Law No. 1-1997, § 157 (eff. July 1, 1997).

However, the legislature amended Ind. Code § 31-1-11.7-2 in 1993, eliminating the language precluding a court from granting visitation to a grandparent who is the parent of a person who has been awarded custody of the grandchild, *see* Pub. Law No. 229-1993, § 1, and later repealed the statute in 1997 when it enacted Ind. Code § 31-17-5-1, the current statute. *See* Pub. Law No. 1-1997, § 157 (eff. July 1, 1997) (revoking Ind. Code § 31-1-11.7-2), and § 9 (eff. July 1, 1997) (adding Ind. Code § 31-17-5-1). The current statute, Ind. Code § 31-17-5-1, does not preclude a grandparent from seeking visitation with a child where the custodian of the child is the grandparent's child.[3]

[13] We also observe the trial court incorporated Parents' marital settlement agreement into its dissolution decree and Section 2.01 of the agreement provides that Parents "agree that they should recognize and address the child's basic needs . . . [t]o develop and maintain meaningful relationships with other significant adults (grandparents . . . ) as long as these relationships do not interfere with or replace the child's primary relationships with the parents." Appellant's Appendix Volume II at 25-26.

---

[3] *See Daugherty v. Ritter*, 646 N.E.2d 66, 66-67 (Ind. Ct. App. 1995) (noting grandparents had standing to seek visitation of their grandchild under the GVA where the grandchild lived with her mother, who was the grandparents' child), *adopted by* 652 N.E.2d 502 (Ind. 1995); *Moses v. Cober*, 641 N.E.2d 668, 671 (Ind. Ct. App. 1994) (noting the legislature's amendment to the GVA in 1993 eliminating the language precluding a court from granting visitation to a grandparent who is the parent of a person who has been awarded custody of the grandchild), *abrogated on other grounds by Daugherty*, 652 N.E.2d 502 (Ind. 1995).

We conclude that Grandfather has established prima facie error and that he may seek visitation rights with S.S. under the GVA. We reverse and remand for further proceedings on Grandfather's petition.

Reversed and remanded.

Vaidik, J., and Bradford, J., concur.