Danny R. KITCHEN, Jr., Appellant–
Respondent,

v.

Rebecca KITCHEN (deceased), Michael
Lake and Shelly Lake, Appellees–
Petitioner/Intervenors.

No. 27A04–1101–DR–14.

Court of Appeals of Indiana.

Aug. 29, 2011.

Joe Keith Lewis, Marion, IN, Attorney for Appellant.

Matthew J. Roth, DeLaney Hartburg Roth & Garrott LLP, Huntington, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

Danny R. Kitchen, Jr. ("Danny") appeals the trial court's order denying his motion for relief from judgment from the trial court's order granting visitation to Michael Lake and Shelly Lake (collectively "the Lakes"), the maternal aunt and uncle of Danny's minor child, K.K. Danny raises the following restated issues for our review:

I.  Whether the trial court erroneously concluded that it had the authority to award third party visitation to persons other than a grandparent, parent, or step-parent; and

II. Whether Danny's motion for relief from judgment was untimely.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Danny and Rebecca Kitchen ("Rebecca") were married, and Rebecca later petitioned for dissolution of the marriage in Grant County. On March 10, 2006, the trial court entered its decree approving the settlement agreement executed by Danny and Rebecca. Pursuant to the decree, Danny and Rebecca were to share joint legal custody of their child, K.K., with Rebecca to have primary physical custody of the child, and Danny to have regular parenting time.

Rebecca and K.K. lived with the Lakes from November 2006, until Rebecca's death after an extended illness on December 14, 2007. On December 10, 2007, Danny had petitioned the dissolution court for immediate custody of K.K., alleging that Rebecca's parents would not relinquish custody of the child. On the same date, the Lakes had filed a guardianship petition in Huntington County, seeking to be appointed guardians of K.K. On December 19, 2007, the Lakes filed a petition to intervene in the dissolution matter in Grant County and alleged that Danny had not seen K.K. for a period of twenty months.

Ultimately, Danny and the Lakes entered into an agreement, which was accepted by the trial court, providing that the Lakes would be granted temporary custody of K.K. and Danny would exercise parenting time. This arrangement deteriorated, with Danny filing an affidavit alleging that the Lakes had denied him visitation, and with the Lakes filing a petition for restricted parenting time, alleging that Danny had sexually abused K.K. during his parenting time. The trial court entered an order, finding that the Lakes were not in contempt of court and providing that Danny's visitation with K.K. be supervised by Danny's mother. The previously-scheduled custody hearing date was retained.

On June 26, 2009, the trial court heard evidence and issued its order regarding custody of K.K. The trial court granted full custody of K.K. to Danny and awarded supervised visitation to the Lakes. Neither Danny nor the Lakes appealed this order.

On March 11, 2010, Danny filed a petition requesting that the trial court vacate the portion of the June 26th order granting visitation to the Lakes. The Lakes filed a petition to enforce the order and alleging that Danny was in contempt. On August 30, 2010, the trial court entered an order, finding Danny in contempt and de-

nying Danny's petition. On September 29, Danny filed his motion for relief from judgment alleging that the visitation provision of the June 26th order was void or voidable as the Lakes lacked standing to petition for visitation with K.K. The trial court denied this motion, finding and concluding that Danny was attacking the sufficiency of the evidence to support the visitation order and that the time for such a challenge, via a motion to correct error and direct appeal, had passed. The trial court concluded that Danny was not entitled to relief under Indiana Trial Rule 60(B). Danny now appeals.

## DISCUSSION AND DECISION

### I. Grant of Visitation

■ Danny challenges the Lakes' standing, as the maternal aunt and uncle, to pursue visitation with K.K., and contends that the trial court lacked the authority to grant visitation to persons other than a parent, grandparent, or step-parent. The trial court concluded that it had the authority to grant visitation to the Lakes according to *In re Paternity of J.A.C.*, 734 N.E.2d 1057 (Ind.Ct.App.2000).

In *J.A.C.*, a panel of this court was asked to determine if the trial court erroneously ordered visitation in favor of the child's maternal aunt. Without addressing the issue of standing, we reversed the trial court's visitation order on the grounds that the findings of fact and conclusions thereon were insufficient to support the visitation order. 734 N.E.2d at 1058. The Lakes opine that implicit in that decision is this court's openness to the extension of third-party visitation rights to persons such as aunts and uncles. We disagree.

In *Worrell v. Elkhart County Office of Family & Children*, 704 N.E.2d 1027 (Ind. 1998), our Supreme Court was asked to determine if former foster parents had standing to petition a trial court for visitation with their former foster children and concluded that they do not. *Id.* at 1029. In reaching that holding, our Supreme Court examined its own prior decisions and decisions of this court, and that examination is worth reproducing here.

When the Court of Appeals established the two-prong test for third party visitation in *Collins v. Gilbreath*, it expressly limited the breadth of its application. 403 N.E.2d 921, 923–24 (Ind.Ct.App. 1980) ("*In so holding we do not intend ... to open the door and permit the granting of visitation rights to a myriad of unrelated third persons ... who happen to feel affection for a child. Our decision is explicitly limited to the type of factual situation presented by this case....*"). That case involved a visitation request from a step-father who was married to the custodial natural mother of the children and who lived with the children prior to the death of the mother. *Id.* at 922. *Accord, In re Custody of Banning*, 541 N.E.2d 283 (Ind.Ct. App.1989) (upon death of child's natural father, court upheld custody of natural mother and visitation of step-mother who knew the child through visitation with child's natural father when he was alive).

Subsequent cases extended visitation to former step-parents following divorce. *See, e.g., Caban v. Healey*, 634 N.E.2d 540 (Ind.Ct.App.1994) (upon divorce of child's natural father and step-mother, court upheld custody of natural father and visitation of step-mother who raised child from infancy); *cf. Francis [v. Francis* ], 654 N.E.2d 4 [ (Ind.Ct.App. 1995) ] (upon divorce of children's natural mother and her ex-husband, court upheld custody of natural father and visitation of natural mother's ex-husband who raised children born during their marriage, and who did not discover that

he was not the natural father until he and mother divorced).

*In other cases, courts have declined to extend visitation rights to third parties who are not step-parents. See Wolgamott v. Lanham,* 654 N.E.2d 890 (Ind. Ct.App.1995) (court denied visitation to ex-boyfriend of mother because he was an "unrelated stranger"); *Tinsley [v. Plummer],* 519 N.E.2d 752, 752–55 [ (Ind.Ct.App.1988) ] (upon death of mother, court denied visitation to child's great-aunt and -uncle because the relatives saw the child only five times a year at family gatherings).

*We agree with the prior holdings limiting standing to step-parents,* and we now hold that the test does not extend to foster parents. As the Court of Appeals noted in the context of grandparent visitation, *an expansion of the class of petitioners with standing to request visitation* ,to include foster parents *"should occur in a legislative, not judicial, forum." Collins,* 403 N.E.2d at 924 n. 1.

704 N.E.2d at 1029. (Emphasis added).

Noncustodial parents are entitled to reasonable parenting time unless "that parenting time might endanger the child's physical health or significantly impair the child's emotional development." Ind.Code § 31–17–4–1. The legislature conferred standing upon grandparents to seek visitation under certain conditions. *See* Ind. Code § 31–17–5–1. Case law conferring standing to seek visitation has been limited only to step-parents, with the grant of visitation only after the application of the two-prong test announced in *Collins,* 403 N.E.2d at 923–24 (prove custodial and parental relationship, then prove visitation is in best interest of child).

The Lakes also direct us to *King v. S.B.,* 837 N.E.2d 965 (Ind.2005) and *M.S. v. C.S.,* 938 N.E.2d 278 (Ind.Ct.App.2010), to support their position that this court and our Supreme Court are amenable to an expansion of the class of petitioners with standing to request visitation. Again, we disagree. Those cases involved the unique situation of visitation rights of a former same-sex partner to a child born during the relationship.

In *King,* our Supreme Court, without addressing the issue of standing, held that a former domestic partner's declaratory judgment action seeking entitlement to parenting time rights, child support obligations, and other parental rights and responsibilities with respect to a child born during the relationship survived a motion to dismiss under Indiana Trial Rule 12(B)(6). 837 N.E.2d at 967. However, the Supreme Court merely decided that the relief sought stated a claim that survived the motion to dismiss, without commenting on or deciding the petitioner's entitlement to the relief sought, i.e., the merits of the claim. *Id.* In *M.S.,* this court held that the trial court properly vacated its previous order granting joint legal custody and parenting time to the petitioner, who was the former same-sex partner of the child's mother. 938 N.E.2d at 287. Without reaching the issue of standing, we concluded that the trial court's finding that visitation would not be in the child's best interest was supported by the record and not clearly erroneous. *Id.* Therefore, these cases, which are factually and procedurally distinguishable, are not helpful to our resolution of the issue presented here.

■ Parental rights are matters of constitutional import protected by the Fourteenth Amendment to the United States Constitution. *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind.2005). *See also Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he interest of parents in the care, custody and control of

their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court.") Accordingly, we adhere to the limitation of our statutes and case law conferring standing only to parents, grandparents and step-parents. The trial court erred in concluding that it had the authority to grant third-party visitation to persons other than parents, step-parents, or grandparents.

## II. Timeliness of the Challenge

█ The Lakes argue and the trial court agreed that Danny's challenge of the visitation order was not timely. The trial court concluded that the motion for relief from judgment was a challenge of the trial court's exercise of its authority, and not a challenge of the trial court's power or authority. Thus, the trial court concluded that Danny should have filed a motion to correct or perfected a direct appeal from the visitation order. Since Danny did neither, and the time for filing such motion or perfecting such appeal had passed, the trial court concluded that Danny was not entitled to relief from that judgment.

Danny argues that the trial court incorrectly denied his motion for relief from judgment brought under Indiana Trial Rule 60(B)(6) and/or 60(B)(8). Indiana Trial Rule 60(B)(6) provides that a trial court may relieve a party from a judgment where the judgment is void and the motion is filed within a reasonable time. Indiana Trial Rule 60(B)(8) provides relief from a judgment for any other reason, not set forth in other subsections, where the motion is filed within a reasonable time and alleges a meritorious claim or defense.

█ In regard to Indiana Trial Rule 60(B)(6), the Lakes claim that the visitation order was voidable and not void; therefore, Danny could only attack it via a direct appeal, an avenue he did not pursue. "The distinction between a void and voida-ble judgment is no mere semantic quibble." *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind.1998). "A voidable judgment or order may be attacked only through a direct appeal, whereas a void judgment is subject to direct or collateral attack at any time." *M.S.*, 938 N.E.2d at 284 (citing *In re Paternity of P.E.M.*, 818 N.E.2d 32, 36 (Ind.Ct.App.2004); *Beanblossom v. State*, 637 N.E.2d 1345, 1349 (Ind.Ct.App.1994)). These terms have been used interchangeably in spite of the technical difference between them. *Trook v. Lafayette Bank & Trust Co.*, 581 N.E.2d 941, 944 (Ind.Ct.App.1991). "[V]oid in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it." *Id.* (quoting Black's Law Dictionary 812 (abridged 5th ed.1983) (emphasis and alteration in original)).

█ As we stated in *M.S.*,

an order is "void" only "when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification." "Voidable," however, "describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared." Accordingly, in *P.E.M.*, this court determined that an order granting visitation under the Grandparents Visitation Act failed to comply with the statutory requirement that the trial court set forth findings of fact and conclusions of law. However, because the defect was merely "in form" or a "procedural irregularity, which is capable of being cured," the visitation order was deemed merely voidable.

938 N.E.2d at 284 (internal citations omitted). An order is void where the trial court lacks the authority to act. *See Beanblossom*, 637 N.E.2d at 1349 (court order modifying defendant's sentence was void because court lacked statutory authority to modify defendant's sentence without approval of prosecuting attorney).

Here, the trial court lacked the authority to grant visitation to the Lakes because they did not have standing to petition for visitation with K.K. Because the lack of standing cannot be cured, that portion of the June 26th order granting visitation rights to the Lakes is void. We conclude that the trial court erred by denying Danny's motion for relief from judgment on this ground and find that it was filed within a reasonable time.

Reversed and remanded.

BAKER, J., and BROWN, J., concur.