ATTORNEY FOR APPELLANT
Deborah M. Agard
Indianapolis, Indiana

APPELLEES, PRO SE
S. B., pro se
Anderson, Indiana

J. B., pro se
Anderson, Indiana



# In the
# Indiana Supreme Court

No. 48S02-1305-GU-398

IN RE THE GUARDIANSHIP OF
A.J.A. AND L.M.A., MINOR CHILDREN

J.C.,

*Appellant (Intervenor below),*

v.

J.B. AND S.B.,

*Appellees (Petitioners below),*

Appeal from the Madison Superior Court 2, No. 48D02-1011-GU-367
The Honorable G. George Pancol, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-1204-GU-326

**July 18, 2013**

**David, Justice.**

The Grandparent Visitation Statute is very specific as to under what circumstances a trial court may order grandparent visitation. It does not provide a means by which the paternal grandmother may seek visitation when her son has murdered the mother of her two

grandchildren. The order granting grandparent visitation was void, and the trial court correctly vacated its original order which mistakenly granted such visitation.

## Facts and Procedural History

On April 23, 2008, M.A. murdered[1] his wife, C.A., in the presence of their two small children, five-year-old A.J.A. and one-year-old L.M.A. M.A.'s brother, J.B. and his significant other, S.B. (the Guardians) took immediate custody of the children and thereafter filed a petition for guardianship over the persons and estate of A.J.A. and L.M.A. On July 3, 2008, the guardianship petition was granted. One week later, the paternal grandmother, J.C. (Grandmother) filed a petition to intervene in the guardianship for purposes of seeking grandparent visitation. The parties entered into an agreement whereby Grandmother would have visitation with the children each Sunday for one hour, supervised by chaperones over a six-week period. The parties agreed to review the matter at the end of the six-week period. During one of the trial visits, Grandmother took the children to the jail to visit M.A., violating the temporary visitation order. The Guardians also discovered Grandmother was violating the criminal court's no contact order prohibiting M.A. from communicating with the oldest child.

Following Grandmother's violation of the visitation order, the Guardians argued that Grandmother lacked standing to petition for visitation under the Grandparent Visitation Act. On February 4, 2009, the trial court determined that Grandmother did have standing and granted supervised visitation pending the next hearing. Thereafter, the Guardians filed a motion to correct error and relief from judgment. On July 6, 2009, the trial court issued an Amended Order Approving Petition for Grandparent Visitation.

The trial court's Amended Order of July 6, 2009 granted limited visitation for Grandmother. Ultimately the parties ended up back in court on the Guardians' request to terminate Grandmother's grandparent visitation and related motions. Hearings were held on January 19, 2012 and then again on March 7, 2012. On March 26, 2012, the trial court issued its findings of fact and conclusions thereon that declared the 2009 grandparent visitation order void

---

[1] M.A. pled guilty and in December, 2008 and was sentenced to serve sixty years in the Department of Correction for the murder.

and vacated the same for want of subject matter jurisdiction, finding that Grandmother lacked standing because the parents' marriage had not been dissolved by an Indiana court. The trial court held, "[s]ince [Grandmother], as a parent of someone other than the deceased parent, has no entitlement to visitation under the statute, it necessarily follows [that] the court had no authority to grant such visitation[,] and the order is void at law. The order being void, Guardians may raise the issue at any time[,] and the issue is not waived."

The Court of Appeals reversed. We grant transfer and affirm the trial court.

## Discussion

At issue in this appeal is the trial court's original order granting grandparent visitation to Grandmother. In one of her first opinions on this Court, Justice Rush discussed the history behind the Grandparent Visitation Act in In re Visitation of M.L.B., 983 N.E.2d 583 (Ind. 2013). Historically, grandparents had no special common-law right to visitation with their grandchildren. Id. at 585. The Courts had previously thought any grandparent visitation policy should be a "legislative, not judicial" function. Collins v. Gilbreath, 403 N.E.2d 921, 923–24 (Ind. Ct. App. 1980). It was not until 1981 that an Indiana court recognized limited rights to grandparent visitation. See Krieg v. Glassburn, 419 N.E.2d 1015, 1018–19 (Ind. Ct. App. 1981). The very next year, the General Assembly passed Indiana's first Grandparent Visitation Statute. Ind. Code § 31-1-11.7-1 to 8 (1982). Apart from a 1989 amendment expanding the statute, the substance has remained largely unchanged, even through its 1997 recodification.

The Grandparent Visitation Statute currently reads, "[a] child's grandparent may seek visitation rights if: (1) the child's parent is deceased; (2) the marriage of the child's parents has been dissolved in Indiana; or (3) subject to subsection (b), the child was born out of wedlock." Ind. Code § 31-17-5-1. Grandmother argues that her son, M.A., should be considered deceased based on his sentence of sixty years incarceration, or in the alternative, the marriage was technically dissolved due to M.A. murdering C.A. and therefore she should have standing under sections (1) or (2) of the Grandparent Visitation Statute.

Our Court of Appeals decided a similar case in In re Visitation of C.R.P., 909 N.E.2d 1026 (Ind. Ct. App. 2009), trans. denied. In that case, just as here, the father killed the mother,

and the aunt and uncle adopted the child. Just as here, paternal grandmother filed for grandparent visitation. The Court of Appeals held that the Grandparent Visitation Act was "enacted in derogation of the common law and must be strictly construed." Id. at 1028. Grandparents must have standing as prescribed under the Act to seek visitation rights. Id. If a grandparent lacks standing, the petition must be dismissed as a matter of law. Id. We agree with the Court of Appeals analysis in ultimately holding that the Grandparent Visitation act "confers standing only upon grandparents who are the parents of the deceased parent of the child." Id. The Court ultimately found that since the grandmother was not the parent of the deceased parent, she did not have standing to seek visitation.

Our analysis is further strengthened by the Court of Appeals case In re Visitation of J.P.H., 709 N.E.2d 44, 46 (Ind. Ct. App. 1999). This case also involved a unique determination of the Grandparent Visitation Statute, and drew upon statutory interpretation language from JKB, Sr. v. Armour Pharmaceutical Co., 660 N.E.2d 602 (Ind. Ct. App. 1996), trans. denied:

> When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.

Id. at 605. The Court of Appeals goes on to write that "courts will reject an interpretation of a statute which produces an absurd result." Id. (citing Barger v. State, 587 N.E.2d 1304, 1306 (Ind. 1992)).

In the present case, both of Grandmother's theories would produce an absurd result. Her first theory, that her son is for all intents and purposes deceased, unfortunately attempts to circumvent the strict interpretation the statute is due and therefore her argument fails. Her son is not dead. Her son is incarcerated with a sixty year sentence for the murder of her grandchildren's mother. In fact, it is Grandmother's surreptitious attempts to facilitate

4

communication between the children and J.A. that illustrate the absurdity of her argument. In this case, there is clearly a difference between those who, as Grandmother argues, are essentially dead because they are in prison, and those who are dead. Father is not dead and Grandmother is trying to affect visitation between the murder and the children, contrary to the express wishes of the Guardians. Grandmother's other theory for grandparent visitation is that by virtue of the murder, the marriage was dissolved. This produces an even more nonsensical result. We cannot construe any scenario where the General Assembly intended the Grandparent Visitation Act to potentially require grandparent visitation by the mother of an individual who shot and killed the grandchildren's other parent.

Having held that Grandmother did not meet one of the three[2] strict definitions by which she could seek grandparent visitation rights, we now turn to whether the original order on grandparent visitation was void or merely voidable.

"The distinction between a void and a voidable judgment is no mere semantic quibble." Stidham v. Whelchel, 698 N.E.2d 1152, 1154 (Ind. 1998). "A void judgment is one that, from its inception, is a complete nullity and without legal effect[.] By contrast, a voidable judgment is not a nullity, and is capable of confirmation or ratification. Until superseded, reversed, or vacated, it is binding, enforceable, and has all the ordinary attributes and consequences of a valid judgment." Id. "A voidable judgment or order may be attacked only through a direct appeal, whereas a void judgment is subject to direct or collateral attack at any time." M.S. v. C.S., 938 N.E.2d 278, 284 (Ind. Ct. App. 2010).

In M.S. v. C.S., 938 N.E.2d 278 (Ind. Ct. App. 2010), the Court of Appeals wrote, "void in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; voidable exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it." Id. at 284 (quoting Trook v. Lafayette Bank and Trust Co., 581 N.E.2d 941, 944 (Ind. Ct. App. 1991), trans. denied, (quoting Black's Law Dictionary 812 (abridged 5th ed. 1983)).

---

[2] There are three definitions by which a grandparent can seek grandparent visitation, however only two of them are at issue in this case. Subsection (3) is for a child born out of wedlock, which is not at issue in this appeal.

Two cases highlight the difference between void and voidable. In In re Paternity of P.E.M., 818 N.E.2d 32 (Ind. Ct. App. 2004), grandparents sought visitation rights with their grandchild, P.E.M. At issue in P.E.M. was that the trial court's order granting grandparent visitation was not properly supported by findings of fact and conclusions of law. The Court of Appeals correctly held that this was a defect merely in form, a procedural irregularity, capable of being cured. Id. at 37. Thus, the order was held to be merely voidable, and could only be challenged through a direct appeal, which did not happen, and accordingly the right to challenge the order was waived. Id. Most recently, in M.L.B., we held an order merely voidable for incomplete findings of fact and conclusions of law. M.L.B, 983 N.E.2d at 588.

Conversely, in M.S. v. C.S., the Court of Appeals held that the General Assembly did not intend to allow parents to establish joint custody through Indiana Code section 31-17-2-3, because that essentially circumvented the Adoption Act. Thus, the Court of Appeals stated the Order on custody was not merely a procedural error, but "the trial court lacked the authority to grant the joint petition . . . under any set of circumstances, and the error was therefore impossible to cure." M.S. 983 N.E.2d at 284. Thus, the Court of Appeals held that order was void ab initio and without legal effect.

Another illustrative case is Kitchen v. Kitchen, 953 N.E.2d 646, (Ind. Ct. App. 2011). In Kitchen, a third party was granted visitation with the children. The Court of Appeals held that the trial court "erred in concluding that it had the authority to grant third-party visitation to persons other than parents, step-parents, or grandparents." Id. at 650. The Court of Appeals stated that the trial court "lacked the authority to grant visitation to the Lakes because they did not have standing to petition for visitation with K.K. Because the lack of standing cannot be cured, that portion of the June 26th order granting visitation rights to the Lakes is void." Id. at 651.

In the present case, the Court of Appeals relied on K.S. v. State, 849 N.E.2d 538 (Ind. 2006) for its holding that the order was merely voidable. K.S. held that where subject-matter jurisdiction and personal jurisdiction exist, "a court's decision may be set aside for legal error only through direct appeal and not through collateral attack." Id. at 540. K.S. is a case involving a juvenile delinquent. In 2002, K.S. committed acts that would have constituted Class A

6

misdemeanor battery if committed by an adult.  Id.  The court's probation department filed a preliminary inquiry and investigation report and the same day an initial hearing was held.  Id. K.S. admitted the allegations and the court adjudicated him to be delinquent and placed him on probation.  Id.  Over the following year, K.S. violated his probation several times.  Id.  The appeal in K.S. arose after he claimed that "the court did not have 'jurisdiction over the case' from the very beginning because it failed to approve by written order the filing of the original delinquency petition."  Id. at 541.

Unlike the present case, K.S. is about a procedural error.  In K.S., the juvenile court failed to approve the filing of the petition.  However, K.S. was a juvenile, a Marion County resident, and admitted to the juvenile court the allegations contained in the petition.  The error by the juvenile court was merely voidable, capable of correction, and as K.S. did not object during the proceeding, he waived his objection.  This is markedly different from the facts of the case before us.  To analogize the current case to K.S., it would be as if the juvenile in K.S. was actually an adult and thus the juvenile court had no jurisdiction over him.  That would be an error incapable of correction, and thus void.

We hold today that the trial court's original order granting Grandmother grandparent visitation was void and thus without legal effect.  Thus, we affirm the March 26, 2012 order of the trial court finding the original grandparent visitation order was void.  Grandmother never had any standing to file a Grandparent Visitation action.  She was not the grandparent of the deceased parent, nor was she the grandparent of a dissolved marriage.  Grandmother did not have standing under the strict terms of the grandparent visitation statute as has been stated herein. This is a case where Grandmother had no legal right to pursue grandparent visitation under the statute.  Remand cannot cure the defect.  The only cure is to hold the original order was void ab initio.

**Conclusion**

The 2009 order granting Grandmother grandparent visitation rights is void.  We affirm the trial court's order vacating the 2009 order.

Dickson, C.J., and Rucker, Massa, and Rush, J.J., concur.