# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEY FOR APPELLEES:

**BRYAN L. CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| IN RE THE MATTER OF I.E.: | ) | |
| | ) | |
| J.E., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 72A01-1212-JP-567 |
| | ) | |
| W.L, R.L., and N.V., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE SCOTT CIRCUIT COURT
The Honorable Roger Duvall, Judge
Cause No. 72C01-0910-JP-68
Cause No. 72C01-0911-GU-40

**August 14, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

J.E. (Father) is the biological father of I.E.; N.V. (Mother) is I.E.'s biological mother. W.L. and R.L. (Guardians) were former guardians of I.E. This appeal involves questions concerning custody and visitation rights of the parties with respect to the child. It appears that the Guardians and Mother are joined as appellees in this appeal, and, unless otherwise indicated, we will refer to them collectively as the Appellees. For the sake of clarity, we will first address issues presented by the Appellees upon cross-appeal. Those consolidated, restated issues are:

1.    Did the trial court apply an incorrect standard in determining whether to grant Father's motion for change of custody, and did the trial court err in granting Father's motion?

2.    Did the trial court err in granting visitation rights to the Guardians?

We restate the final issue, presented by Father upon direct appeal, as follows:

3.    Did the trial court err in declining to grant reasonable visitation to Mother?

We affirm and reverse in part.

The facts are that I.E. was born sometime in September 2009 to Mother. Mother was married to another man, not Father, at the time. The Guardians took I.E. home from the hospital with the consent of Mother. On September 18, 2009, the Guardians filed a petition to adopt I.E. On October 6, 2009, Father filed a petition to establish paternity of I.E. under cause number 72C01-0910-JP-68 (the paternity action). On November 5, 2009, the Guardians petitioned to intervene in the paternity action. That petition was granted. On November 6, 2009, the Guardians filed a guardianship action under cause number 72 C01-091-GU-40 (the guardianship action). Shortly thereafter, Father filed a petition to intervene

2

in the guardianship action. From that point on, the two causes were addressed at the same time.

The trial court granted the Guardians' petition to establish temporary guardianship of I.E. Following a March 18, 2010 hearing, the trial court found that Father was I.E.'s father. I.E. remained in the sole care and custody of the Guardians until April 1, 2010 when Father was granted visitation pursuant to the Indiana Parenting Time Guidelines. On May 7, 2010, the parties reached an agreement following mediation. Pursuant to that agreement, the Guardians would have "joint legal and physical custody" of I.E., and Father and the Guardians would have specific times allocated for parenting time. *Appellant's Appendix* at 27. Mother would also have parenting time, which she would exercise during the Guardians' parenting time. Under this arrangement, the Guardians and Mother had I.E. approximately eight days every two weeks, while Father had the remainder. On December 15, 2011, Father filed petitions to terminate the guardianship and to modify custody. After granting two continuances at Mother's request, the trial court held a hearing on May 15, 2012. On August 31, 2012, the trial court appointed a guardian ad litem for I.E. A second hearing was held on November 8, 2012.

On December 4, 2012 the trial court issued an order terminating the guardianship and granting custody of I.E. to Father. Further, the court granted visitation rights to the Guardians in the paternity action, as reflected in the following:

> 4.     All future proceedings concerning the Child shall be conducted under
>        Cause No. 72 C01-0910-JP-68. The Guardians are a party to the
>        paternity case.

3

*   *   *   *   *

7.  Having found that there is no legal reason for the continuation of the guardianship, there should be a transition to where the Guardians have a relationship with the Child that is consistent with a visitation relationship and not a joint custodian relationship.

8.  At this time the Guardian shall have visitations schedule [sic] with Standard Indiana Parenting Time Guidelines with the exception that there shall be no extended visitation in the summer other than a one week visitation.

9.  The Court makes no parenting time order for the Mother at this time as there is no formal motion before the Court on her behalf for parenting time; she has been limited in her contact with the Child and has exercised that parenting time at the home of the Guardians. The Court denies the Mother's alternative motion for custody of the Child as there is no evidence to support such a finding that placement of the Child in her custody would be in the best interests of the Child.

*Id.* at 70.

1.

The Guardians contend the trial court applied an incorrect standard when ruling upon Father's petition to modify custody, and that the court erred in granting the petition. According to the Guardians, the trial court erred in failing to require Father to show a substantial and continuing change of circumstances, which they claim is required for a modification. Further, they contend that the trial court erred in requiring the Appellees to show by clear and convincing evidence that Father was unfit, had long acquiesced in the current custody arrangement, or voluntarily relinquished I.E. in such a way that the affections of I.E. and the Guardians became interwoven so that severing them would seriously endanger I.E.'s future happiness.

4

We have set out the standard of review for custody modifications, as follows:

> We review custody modifications for abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002) (quoting *In re Marriage of Richardson,* 622 N.E.2d 178, 178 (Ind. 1993)). Also, as with all cases tried by the court without a jury, the trial judge in this case entered special findings and conclusions thereon pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether findings support the judgment. *Stonger v. Sorrell,* 776 N.E.2d 353, 358 (Ind. 2002). On appeal we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind. 2005). A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id*.

*K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009).

We start by considering *K.I.*, a case that is factually similar to the present case, and a case in which the court discussed the circumstances under which custody of a child may be awarded to a party other than a natural parent. As was the case here, the child in *K.I.* was born out-of-wedlock. The father was not aware that the mother had been impregnated as a result of the relationship until after the baby was born. Approximately six weeks after the baby's birth, the mother left the child in the custody of her mother (the grandmother). The grandmother and her husband filed a petition seeking guardianship of the child, and that petition was granted. During a chance encounter, the mother informed the father that a child had been born and showed him the child's picture. The grandmother filed a petition to establish paternity, seeking an order declaring the father as the child's biological father. She also sought an order awarding custody of the child to her (grandmother) and directing the

5

father to pay child support. Subsequent genetic tests established a 99.89% probability that the father was the biological father of the child.

The parties thereafter entered an agreement providing that all of the parties, including the father, mother, and grandmother, would exercise visitation rights. The agreement also provided that grandmother would retain custody of the child. This arrangement was in place for approximately eighteen months, during which the father exercised regular visitation with the child. At that point, the father filed a petition for change of custody, seeking custody of the child. After a hearing, the trial court awarded custody of the child to her father and granted visitation rights to the grandmother. The grandmother appealed the change-of-custody award. In her appeal, the grandmother argued that the trial court applied the wrong legal standard for custody modification from a grandparent to a natural parent.

The Court began its analysis by disapproving language in a previous case from this court, i.e., "a burden shifting approach is the most appropriate way to protect parental rights and the best interests of the child." *Id.* at 459 (quoting *In re the Paternity of Z.T.H.*, 839 N.E.2d 246, 252 (Ind. Ct. App. 2005)). The Court stated, "the distinctions between the statutory factors required to obtain initial custody and those required for a subsequent custody modification are not significant enough to justify substantially different approaches in resolving custody disputes," because both require a determination of the child's best interest and both require consideration of certain relevant factors. *Id.* at 460. The Court also stated, "importantly, Indiana courts have long held that '[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does

not shift to the parent[,] … [r]ather, the burden of proof is always on the third party." *Id.* (quoting *In re Guardianship of J.K.*, 862 N.E.2d 686, 692 (Ind. Ct. App. 2007)). This is because a "burden shifting regime that places 'the third party and the parent on a level playing field' is inconsistent with this State's long-standing precedent." *Id.* (quoting *In re the Paternity of Z.T.H.*, 839 N.E.2d at 253). The Court indicated that this principle applied not only to parents seeking to reobtain custody, but also to parents who never had custody in the first place.

The Court described with specificity the allocation of the burden of proof in cases such as the present case, as follows:

> It is of course true that a party seeking a change of custody must persuade the trial court that "(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter." I.C. § 31–14–13–6; *see also Heagy v. Kean,* 864 N.E.2d 383, 388 (Ind. Ct. App. 2007) (holding that "[m]odification of child custody may occur only when a parent can demonstrate 'modification is in the best interests of the child, and there is a substantial change in one or more factors the court may consider.'"). But these are modest requirements where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party. The parent comes to the table with a "strong presumption that a child's interests are best served by placement with the natural parent." *B.H.,* 770 N.E.2d at 287. Hence the first statutory requirement is met from the outset. And because a substantial change in any one of the statutory factors will suffice, "the interaction and interrelationship of the child with ... the child's parents," *see* Indiana Code Section 31–14–13–2(2)—one of grounds on which the trial court relied in this case—satisfies the second statutory requirement. In essence, although in a very technical sense, a natural parent seeking to modify custody has the burden of establishing the statutory requirements for modification by showing modification is in the child's best interest, and that there has been a substantial change in one or more of the enumerated factors, as a practical matter this is no burden at all. More precisely, the burden is minimal. Once this minimal burden is met, the third party must prove by clear and convincing evidence "that the child's best interests are substantially and significantly

7

served by placement with another person." *B.H.,* 770 N.E.2d at 287. If the third party carries this burden, then custody of the child remains in the third party. Otherwise, custody must be modified in favor of the child's natural parent.

*Id.* at 460-61.

In light of the foregoing, the appellees are correct: the trial court in the present case applied an incorrect standard, at least in a technical sense. Father was indeed required to prove that modification is in the best interests of I.E., and that there is a substantial change in one or more of the factors that the court may consider under Ind. Code Ann. § 34-14-13-2(2) (West, Westlaw current with all 2013 legislation). As our Supreme Court noted, however, the "best interest" requirement is met from the outset because of the strong presumption that a child's best interests are served by placement with the natural parent. In order to satisfy his burden with respect to the second element, Father was required to establish that there had been a substantial change in any one of the factors listed in I.C. § 34-14-13-2(2). The trial court did not enter an explicit finding with respect to any of those factors, which is not surprising in light of the fact that the trial court did not seek to apply this standard in the first place. It did, however, make findings sufficient to permit us to conclude that at least two of the factors in Section 2 were established, especially in light of the fact that the Supreme Court described the burden pertaining to this element as "minimal". *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d at 460. The record clearly demonstrates that there has been a change with respect to Father's wishes concerning custody of I.E., and there has been a change with respect to the interaction and interrelationship between I.E. and Father. *See* I.C. § 31-14-13-2 (2) & (4), respectively. Therefore, under the correct standard, Father carried his burden.

8

At that point, the burden shifted to the Guardians to "prove by clear and convincing evidence 'that the child's best interests are substantially and significantly served by placement with another person.'" *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d at 460 (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002)). The Court described the contours of this burden as follows:

> The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." *Hendrickson,* 161 Ind. App. at 396, 316 N.E.2d at 381. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person.

*In re Guardianship of B.H.*, 770 N.E.2d at 287. In the present case, the trial court described the Guardians' burden in the following terms:

> [the Guardians were required to prove] by clear and convincing evidence either, a). unfitness on the part of the parent, b). long acquiescence in the third party's custody of the child, or c). voluntary relinquishment of the child such that the affections of the child and the third-party have become interwoven [such] that to sever them would seriously mar and endanger the future happiness of the child.

*Appellant's Appendix* at 69. The burden thus identified by the trial court is taken from *Hendrickson v. Binkley*, 161 Ind. App. 388, 316 N.E.2d 376 (1974), *cert. denied*, 423 U.S. 868 (1975). In *In re Guardianship of B.H.*, the Court indicated that, although the

9

*Hendrickson* three-step test is still valid, the trial court is no longer limited to those three factors.

In the present case, however, we cannot perceive any factors the court would have considered under the broadened scope of *In re Guardianship of B.H.* that it did not consider under the *Hendrickson* three-step test. Therefore, although the trial court did not apply the correct test, the test it did apply included only factors that are nevertheless properly considered under the test enunciated in *In re Guardianship of B.H.* In other words, on the facts of this particular case, all of the evidence that would have been relevant to the court's determination under either test was presented and considered by the court in reaching its conclusions.

Without weighing the evidence or assessing witness credibility, and considering only the probative evidence and reasonable inferences supporting the judgment, we are satisfied that sufficient evidence supports the judgment. *See In re Guardianship of B.H.*, 770 N.E.2d 283. The evidence established that since the time he was apprised of the child's existence, Father has, as the trial court stated, "done exactly what the law and society expects of him when faced with the birth of a child born out of wedlock, he has vigorously and appropriately pursued what is his right, to be a father to his son." *Appellant's Appendix* at 70. The evidence further established that Father had suitable housing and was gainfully employed, and thus was both willing and able to provide for I.E. In light of this evidence, the trial court did not abuse its discretion in concluding that the Guardians failed to present evidence that clearly and convincingly established that I.E.'s best interests would be substantially and

significantly served by continued placement with the Guardians, such as to overcome the "strong presumption" that custody of I.E. should be given to his natural father. *See K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 460.

2.

This brings us to Father's issue, which is whether the trial court erred in granting visitation to the Guardians. As our Supreme Court noted in *Worrell v. Elkhart Cnty. Office of Family & Children*, 704 N.E.2d 1027, 1029 (Ind. 1998), this court historically developed a two-part test for determining whether to grant visitation to third parties, i.e., nonparents. "To establish grounds for visitation, a third party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the children's best interest." *Francis v. Francis,* 654 N.E.2d 4, 7 (Ind. Ct. App. 1995), *trans. denied.* As the Supreme Court noted, "[u]nder this regime, the first issue is standing and the second 'is the standard by which the question of visitation is adjudged after the cognizable right is established ....'" *Worrell v. Elkhart Cnty. Office of Family & Children*, 704 N.E.2d at 1029. In order to proceed to the substance of a visitation request, the seeking party must satisfy "the threshold requisite of [a] custodial and parental relationship." *Id.* (quoting *Worrell v. Elkhart Cnty. Office of Family & Children*, 692 N.E.2d 929, 931 (Ind. Ct. App. 1998), *vacated*, 704 N.E.2d 1027). At that point in the development of the law, the question was whether visitation rights extended to third parties other than step-parents. In *Worrell*, the Court resolved this question, stating, "[w]e agree with the prior holdings limiting standing to step-parents, and we now hold that the test does not extend to foster parents." *Id.*

11

An argument can be made that *King v. S.B.*, 837 N.E.2d 965 (Ind. 2005) signaled a retreat from the holding in *Worrell*, with respect to restrictions and to who may seek third-party visitation rights. Even a casual reading of the majority's opinion, as well as Chief Justice Shepard's special concurrence, however, indicates that we should be cautious in reading too much into the case, especially on that point.

This court recently addressed the question of third-party visitation in circumstances similar to those in the present case, at least with respect to several significant factors. In *Kitchen v. Kitchen,* 953 N.E.2d 646 (Ind. Ct. App. 2011), the mother and father divorced, and the settlement agreement provided that mother would have primary physical custody of the child of the marriage. Before the mother's death, Mother and the child lived with the Lakes, the mother's maternal aunt and uncle, for a little more than a year. A few days before the mother's death, the father petitioned for immediate primary physical custody of the child. On the same day, the Lakes filed a guardianship petition seeking appointment as guardians of the child. Ultimately, the father and the Lakes entered into an agreement providing that the Lakes would be granted temporary custody of the child and the father would exercise parenting time. The trial court approved the agreement and entered an order accordingly. Eventually, the trial court awarded custody of the child to the father and awarded supervised visitation to the Lakes. Neither party appealed this order. Approximately nine months later, the father filed a petition asking the court to vacate the portion of the previous order granting visitation to the Lakes. The trial court denied the father's petition, ruling that the time for challenging the trial court's order had passed. The father appealed.

This court concluded that the trial court was without authority to grant visitation rights to the Lakes, explaining:

> Parental rights are matters of constitutional import protected by the Fourteenth Amendment to the United States Constitution. … Accordingly we adhere to the limitation of our statutes and case law conferring standing only to parents, grandparents and step-parents. The trial court erred in concluding that it had the authority to grant third-party visitation to persons other than parents, step-parents, or grandparents.

*Id.* at 649-50 (internal citation to authority omitted). Thus, this court reaffirmed that only parents, step-parents, and grandparents may be granted visitation rights. In *Worrell v. Elkhart County Office of Family & Children*, our Supreme Court clarified that this rule excludes foster parents, explaining, "an expansion of the class of petitioners with standing to request visitation to include foster parents 'should occur in a legislative, not judicial, forum.'" 704 N.E.2d at 1029 (quoting *Collins v. Gilbreath*, 403 N.E.2d 921 (Ind. Ct. App. 1980)).

In light of these holdings, the trial court erred in granting visitation rights to the Guardians. Moreover, in *Kitchen*, this court rejected an argument that a challenge to an order erroneously granting visitation rights to third parties other than parents, step-parents, and grandparents is subject to timeliness restrictions. The court explained,

> An order is void where the trial court lacks the authority to act. … Here, the trial court lacked the authority to grant visitation to the Lakes because they did not have standing to petition for visitation with [the child]. Because the lack of standing cannot be cured, that portion of the June 26 order granting visitation rights to the Lakes is void.

*Kitchen v. Kitchen*, 953 N.E.2d at 651.

As our Supreme Court has observed, "[t]he distinction between a void and voidable

13

judgment is no mere semantic quibble." *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind. 1998). "A void judgment is one that, from its inception, is a complete nullity and without legal effect...." *Id.* (quoting 46 Am. Jur.2d *Judgments* § 31 (1994)). On the other hand, a voidable judgment is not a nullity, and may be confirmed or ratified. *Stidham v. Whelchel*, 698 N.E.2d 1152.

To review, the most recent authority on the issue presented by Father is espoused in *Kitchen*, which clarified that "only… parents, grandparents and step-parents" have standing to seek visitation, and that courts have no authority to grant third-party visitation to persons other than parents, step-parents, or grandparents. *Kitchen v. Kitchen*, 953 N.E.2d at 650. The trial court's order in contravention of *Kitchen* is void. *See Kitchen v. Kitchen*, 953 N.E.2d 646. Therefore, we reverse the trial court's order granting visitation rights to the Guardians.

3.

Finally, the Appellees contend that the trial court erred in failing to grant visitation rights to Mother. When reviewing a trial court's determination with regard to parenting time, we grant latitude and deference to the trial court and will reverse only for an abuse of discretion. *In re Paternity of C.H.*, 936 N.E.2d 1270 (Ind. Ct. App. 2010), *trans. denied.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* No abuse of discretion will be found if there is a rational basis for the trial court's determination. *Id.*

Mother was a relatively passive participant in the change-of-custody proceeding

14

below.  The only request she made at the hearing, so far as we can tell, is the following:

> Your Honor, I would very briefly [sic] because if the Court does make a decision as to in some way terminate the guardianship and making [sic] a change of custody, … my client wants custody, if the court makes that kind of determination.  She doesn't think there's sufficient evidence here to make a modification frankly Your Honor, but if there is then....

*Appellant's Appendix* at 68.  Thus, Mother requested only that, if the trial court dissolved the Guardians' guardianship, she wanted custody of I.E.

Although they concede that Mother "did not specifically file a written request for parenting time," the Appellees appear to contend that the court's previous order, which was based upon the mediated settlement, obligated the court to provide for such visits.  *Appellees' Brief* at 13.  Once again, the Appellees couch their arguments in terms of a misallocated burden of proof.  They contend that the trial court erroneously required Mother to show that father was unfit in order to preserve visitation rights with I.E.  Be that as it may, a trial court cannot be said to err in failing to grant a request that was not made.  Mother did not request visitation with the child, and therefore the trial court did not err in failing to award it.

Judgment affirmed in part and reversed in part.

BARNES, J., and CRONE, J., concur.

15